OPINION OF THE COURT
Robert M. Stolz, J.
Defendant, Gary Murray, was convicted on September 13, 1995, after a jury trial, of unlawful imprisonment in the second degree (Penal Law § 135.05), menacing in the second degree (Penal Law § 120.14 [2]), harassment in the first degree (Penal Law § 240.25), menacing in the third degree (Penal Law § 120.15), and harassment in the second degree (Penal Law § 240.26 [23). At the end of the People's case, defendant moved for a trial order of dismissal pursuant to CPL 290.10 and the court reserved decision.
There was evidence at trial from which the jury could find the following:
On January 3,1995, at approximately 3:00 p.m., the complaining witness was walking from her home to her office on West 65th Street in Manhattan when she was approached by the defendant, who offered her $100 if she would come with him to Central Park. Complainant, a woman of significantly smaller stature than defendant, had never seen defendant before. Alarmed, she tried to walk away from him, but defendant proceeded to follow along side of her, despite her repeated pleas to leave her alone. Unable to elude defendant, the complainant sought refuge by trying to enter her office building. However, defendant, still beside her, thwarted her efforts when he slammed the door shut as she tried to open it. The complaining witness then retreated back down the street. As she did so, the defendant grasped her by the elbow and walked beside her, continuing to entreat her to come to the park with him.
As the defendant pursued her down the street, the complaining witness sought help from the occupant of a van that was stopped on the street. However, when she tried to open the *859 passenger side door of the vehicle, the defendant grabbed her by the arm and pulled her to the sidewalk. At this point the complainant was screaming and pleading for help as she tried to pull away from the defendant’s grasp. Warning her to "shut up,” the defendant continued to drag her away from the vehicle for approximately 20 feet in the direction of Central Park.
Eventually, the complainant’s screaming attracted the attention of several witnesses, including a security officer at the New York Jewish Guild for the Blind, who came to her rescue by pulling her from the defendant’s grasp and bringing her into the offices of that organization. Defendant’s arrest followed shortly thereafter. The entire incident lasted approximately five to eight minutes.
On this motion, viewing the evidence in the light most favorable to the People, the court must determine whether any rational trier of fact could have reached the verdict that was rendered by this jury. (People v Contes, 60 NY2d 620, 621 [1983], citing Jackson v Virginia, 443 US 307 [1979].)
A. Count One — Unlawful Imprisonment
With respect to count one, defendant contends that the evidence was not legally sufficient to establish the element of restraint, which is essential to a finding of unlawful imprisonment. The prosecutor’s information charged that the defendant restrained the complaining witness "by moving her from one place to another”. This form of unlawful imprisonment by asportation is specifically defined in Penal Law § 135.00, which provides that: " 'Restrain’ means to restrict a person’s movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful.”
There was sufficient evidence from which the jury could find that the defendant restrained the complaining witness within the meaning of this definition. The word "restrain” was intended to encompass the "unlawful, non-consensual removal or confinement of a person of a sort 'to interfere substantially with his liberty’. As such, it is a broad term covering everything from the most serious cases down to removals and confinements not involving a high degree of isolation, disappearance or violence.” (Staff Comments of Commn on Revision of Penal Law and Criminal Code, McKinney’s Spec Pamph, 1965, at 277.)
*860 As set forth above, the jury could have found that the defendant closely followed the complainant up and down a side street in Manhattan; forcibly blocked her escape when she sought to retreat into her office; continued to grab her elbow as she retreated down the street seeking help; and finally grabbed her and dragged her toward Central Park for approximately 20 feet in the direction of Central Park. This court finds that these facts, accepted as true, afforded a legally sufficient basis for the jury to have found that the complainant was "restrained”. (See, State v Robinson, 20 Wash App 882, 582 P2d 580 [1978] [defendant’s following and attempting to pull complainant toward his automobile was sufficient to show restraint and warrant a finding of unlawful imprisonment]; State v Mendibles, 126 Ariz 218, 613 P2d 1274 [1980] [unlawful imprisonment found where defendant escorted complainant out of her home and then grabbed her by the hair when she attempted to run from him, releasing her immediately thereafter].)
B. Menacing in the Second Degree (Count Two) and Harassment in the First Degree (Count Three)
Defendant also moves to dismiss the charges of menacing in the second degree and harassment in the first degree. More particularly, he argues the evidence was not legally sufficient to support the jury’s determination that he engaged in "repeated” acts or acts constituting a "course of conduct” within the meaning of Penal Law § 120.14 (2) and § 240.25.
A person is guilty of menacing in the second degree when: "He or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death.” (Penal Law § 120.14 [2].)
A person is guilty of harassment in the first degree when: "[H]e or she intentionally and repeatedly harasses another person by following such person in or about a public place or places or by engaging in a course of conduct or by repeatedly committing acts which places such person in reasonable fear of physical injury.” (Penal Law § 240.25.)
*861 The court finds that the evidence was sufficient for the jury to find a "course of conduct”* as that term is used in both statutes. "The term 'course of conduct’ may reasonably be interpreted to mean a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose.” (People v Payton, 161 Misc 2d 170, 174 [Crim Ct, NY County 1994], supra; see also, People v Tralli, 88 Misc 2d 117, 118, supra.) Defendant walked alongside the complainant to her office, barring her way when she sought to escape inside. He continued to stalk her as she retreated up the street, forcibly preventing her from obtaining assistance from the parked van. Finally, he grabbed her arm when she attempted to open the van door, and dragged her toward Central Park. Throughout this terrifying episode, the defendant made it clear that his purpose was to entice or, if necessary, compel the victim to go with him into Central Park.
While defendant’s conduct only lasted for five to eight minutes, neither Penal Law § 120.14 (2) nor § 240.25 requires that a "course of conduct” be of any particular duration. Rather, as noted, it is the defendant’s "continuity of purpose” in engaging in acts which create a reasonable fear of physical injury that is the hallmark of these "anti-stalking” statutes. (People v Tralli, supra.) On this record, the jury was justified in finding that defendant both entertained and demonstrated such a continuity of purpose and that his actions created a reasonable fear of physical injury in the complaining witness. Accordingly, the evidence was legally sufficient to support defendant’s conviction on these counts.
C. Menacing in the Third Degree (Count Four) and Harassment in the Second Degree
Defendant does not contest the sufficiency of the evidence as to these two counts. However, defendant’s conviction of harassment in the second degree (Penal Law § 240.26 [2]) cannot stand. This charge, a violation, was submitted to the jury at the request of the defense as a lesser included offense of count three. In light of the verdict of guilty with respect to count *862 three, the court is required to vacate the conviction of the lesser offense and allow the greater offense to stand. (See, People v Perez, 45 NY2d 204 [1978]; People v Lee, 39 NY2d 388 [1976]; People v Grier, 37 NY2d 847 [1975].) Accordingly, defendant’s conviction of harassment in the second degree is dismissed.
D. The Merger Doctrine
Defendant argues that the merger doctrine bars his conviction of unlawful imprisonment on count one because this charge must be "merged” with the charges of menacing in the third degree (count four) and harassment in the second degree. In view of the court’s dismissal of this latter charge, there is no occasion to consider the merger doctrine as it might relate to it. There remains, nevertheless, defendant’s contention that the merger doctrine requires dismissal of count one (unlawful imprisonment — a class A misdemeanor) because it should be "merged” with his conviction on count four (menacing in the third degree — a class B misdemeanor). For the following reasons the court finds the merger doctrine inapplicable to this case:
"The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them.” (People v Cassidy, 40 NY2d 763, 767 [1976]; see also, People v Gonzalez, 80 NY2d 146, 153 [1992].) As a judicially created doctrine, it must be applied with restraint so as not to thwart the intent of the Legislature in imposing additional punishment for separately cognizable crimes. (People v Cassidy, supra, 40 NY2d, at 765; People v Pellot, 105 AD2d 223, 229 [2d Dept 1984].) Although the case law provides scant discussion of the doctrine as it relates to unlawful imprisonment, as opposed to kidnapping, the court assumes for purposes of this opinion that the doctrine is applicable to that crime as well. (See, People v Brown, 112 AD2d 1087 [2d Dept 1985]; see also, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 135.00.)
Count four of the prosecutor’s information charged the defendant with menacing in the third degree in violation of Penal Law § 120.15, a class B misdemeanor, as follows: "The defendant, in the County of New York, on or about January 3, 1995, by physical menace, intentionally placed or attempted to place *863 [complainant] in fear of death, imminent serious physical injury or physical injury.”
Defendant’s conviction of this offense would require that his conviction of unlawful imprisonment be merged into it only if the unlawful imprisonment was "incidental to and inseparable from” defendant’s menacing of the complaining witness. (People v Cain, 76 NY2d 119, 125 [1990].) Moreover, "where the [menacing] was fully consummated before consummation of the unlawful imprisonment * * * then two distinct crimes have been committed and the merger doctrine is inapplicable.” (Donnino, Practice Commentaries, op. cit., 135.00, citing People v Smith, 47 NY2d 83, 87 [1979].)
Applying these principles, the court finds that defendant’s unlawful imprisonment does not merge into his conviction for menacing. Thus, the jury could have found the defendant had completed the crime of menacing when, after following the victim down the street, he slammed her office door, thereby barring her escape, and then followed her up the street while grasping her arm. Throughout this time, defendant was soliciting the victim to accompany him to the park for, what the jury could again find, was a sexual purpose.
Following this conduct, the defendant grabbed the victim and proceeded to drag her toward the park. At this point, the court finds, defendant’s conduct rose to a more serious and threatening level; for it was at this juncture that the defendant truly "restrained” the victim within the meaning of the unlawful imprisonment statute, i.e, he engaged in an act of asportation, which is a distinctive element of unlawful imprisonment, and is not necessary to a finding of menacing. The court views this postmenacing conduct to be "an aggravating circumstance which the law is intended to proscribe”. (People v Brown, supra, at 1088.) It was neither incidental to nor inseparable from defendant’s menacing of the complainant. Accordingly it should not merge into the lesser and separate offense of menacing.

 [2] The jury was not required to make a finding of both repeated acts and acts constituting a course of conduct to warrant a finding of menacing in the second degree and harassment in the first degree. "[I]n order for a pattern of behavior to constitute a course of conduct, it is unnecessary for a defendant to repeatedly commit acts.” (People v Payton, 161 Misc 2d 170, 173 [Crim Ct, NY County 1994], citing People v Tralli, 88 Misc 2d 117, 118 [2d Dept 1976].)