OPINION OF THE COURT
Raymond Guzman, J.
On March 18, 2000, the defendant was arraigned and *187 charged with aggravated harassment in the second degree, in violation of Penal Law § 240.30 (1), and stalking in the fourth degree, in violation of Penal Law § 120.45 (1). On April 18, 2000, the People filed a superseding information charging the defendant with menacing in the second degree, in violation of Penal Law § 120.14 (2); stalking in the third degree, in violation of Penal Law § 120.50 (3); and 410 counts of aggravated harassment in the second degree, in violation of Penal Law § 240.30 (1). On May 30, 2000, the People filed another superseding information charging the defendant with two counts of aggravated harassment in the second degree, in violation of Penal Law § 240.30 (1) and (2); stalking in the third degree, in violation of Penal Law § 120.50 (3); and menacing in the second degree,- in violation of Penal Law § 120.14 (2).
On July 20, 2000, the defendant filed a motion to dismiss the charge of stalking in the third degree on the ground that the accusatory instrument is facially insufficient with respect to that charge. On August 1, 2000, the People filed a motion in opposition. For the reasons set forth below, the defendant’s motion to dismiss is denied.
Under Penal Law § 120.50 (3), a person is guilty of stalking in the third degree “when he or she * * * With intent to harass, annoy or alarm a specific person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnapping, unlawful imprisonment or death of such person.”
It is well settled that in order to be sufficient on its face, an information and/or any supporting depositions must contain “[n] on-hearsay allegations * * * [which] establish, if true, every element of the offense charged and the defendant’s commission thereof.” (CPL 100.40 [1] [c]; People v Alejandro, 70 NY2d 133 [1987].)
In this case, the superseding information filed by the People on May 30, 2000 was sworn out by the complaining witness (deponent) and alleges that the defendant telephoned deponent at her home at night on approximately 230 occasions from October 1, 1999 to March 17, 2000, leaving messages stating in substance: “you are a whore; you are a bitch.” The deponent states that these phone calls persisted despite the fact that she explicitly told the defendant not to call her, and avers that the calls were harassing, alarming, threatening and placed her in fear of physical harm.
*188 The deponent also alleges that the defendant telephoned deponent at her workplace during the day, on approximately 160 occasions from November 1, 1999 to March 17, 2000, leaving messages similar to those he left at her home. In addition, deponent specifically alleges that the defendant left the following phone messages at deponent’s workplace stating (in substance): (1) “you are a god damn fucking whore, you are A PIECE OF FUCKING SHIT. YOU ARE A SON OF A BITCH AND YOU WILL DIE IN HELL. YOU’RE GOING TO DIE VERY SOON” (message left on Feb. 19, 2000); (2) “i’m longing for your company” (message left on Mar. 5, 2000); and (3> “you keep pushing me. you’re a god damn fucking whore; you’re a god damn piece of fucking shit” (message left on Mar. 7, 2000). The deponent avers that these phone calls to her workplace were also unsolicited and unwelcome, and served no purpose other than to annoy, harass, frighten and alarm her, and placed her in fear of physical injury.
Deponent further alleges that from January 1, 2000 to March 17, 2000, the defendant followed her in the vicinity of her home and workplace on approximately five occasions, and followed her into and around subway stations, as she commuted to and from work, on approximately 15 occasions. Deponent avers that this conduct served no purpose other than to alarm, harass, and annoy her, and placed her in fear of physical injury.
Finally, deponent alleges that the defendant “e-mailed” messages to deponent at her workplace on 14 occasions from February 22, 2000 through March 17, 2000. Without quoting all of the examples provided in the complaint verbatim, the court notes that these messages generally express the defendant’s devotion to the deponent and convey apologies for his “outrageous” and “inappropriate” behavior. However, a portion of an e-mail allegedly sent on March 7th perhaps does bear repeating, to wit: “bunny-grey fur-wurry is sorry he rebelled AGAINST YOU; SCOLD HIM, CORRECT HIM OR AT WORST TIE HIM UP and whip him.” Deponent avers that she found defendant’s e-mail messages alarming, disturbing, harassing and annoying, and that they placed her in fear of serious bodily harm.
In his motion to dismiss, the defendant makes reference only to the complainant’s allegations that the defendant “did follow (complainant) on the subway * * * at least fifteen times.” The defendant argues that these allegations are conclusory father than factual in nature, and that “[t]here are no facts [alleged] to indicate whether a reasonable person would fear physical injury or even that the complainant did have such fear.” Thus, *189 the defendant argues that the allegations contained in the information are insufficient to support a charge of stalking in the third degree. The court disagrees.
First, the defendant grossly understates the factual allegations made against him. As recited supra, the information alleges that the defendant committed literally hundreds of acts directed at the complainant in addition to following the complainant around the subway — conduct which might support the complainant’s conclusion that the defendant was following her.
Moreover, contrary to the defendant’s assertion, the information very specifically does state (several times) that the defendant’s alleged conduct placed the complainant in fear of physical harm. Nevertheless, whether the complainant was actually in such fear is not the issue; the statute requires only that the defendant intentionally engage in a course of conduct likely to cause such fear in the person to whom it is directed. (See, Penal Law § 120.50 [3], quoted supra.)
Thus, the first question is whether the factual allegations, if true, would establish that the defendant’s actions were intentional. The answer is clearly yes. Placing a phone call, for example, is a deliberate act, and the defendant allegedly phoned the complainant, on average, more than twice per day for a period of nearly six months after the complainant says that she told the defendant to stop. Moreover, the allegations suggest that the defendant understood that his conduct was offensive; the complainant states that he wrote apologetic e-mails acknowledging that his behavior was “outrageous” and “inappropriate.” Nevertheless, the defendant allegedly persisted in the conduct; if true, his “intent to harass, annoy or alarm” the complainant can therefore be reasonably inferred.
The next issue is whether the defendant’s alleged actions constituted a “course of conduct.” The phrase “course of conduct” has been defined as “a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose.” (People v Payton, 161 Misc 2d 170, 174 [Crim Ct, Kings County 1994].) The defendant’s alleged actions were numerous and repetitive, and persisted for nearly six months; if true, they clearly constituted a “course of conduct.”
Finally, it is necessary to examine whether the alleged course of conduct would likely cause its target reasonably to fear physical harm. In this regard, the court notes first that the defendant’s telephone communications to the complainant (as *190 alleged) were uniformly angry, abusive and obscene, from the time he began phoning her at home on October 1, 1999. Second, the court notes that the defendant’s alleged conduct toward the complainant not only persisted, but escalated until his arrest on March 17, 2000. As noted supra, the complainant states that she told the defendant not to call her; nevertheless, the complainant states that the defendant not only continued to call her at home, but in November began calling her at work as well. Then, in January, the defendant allegedly began following the complainant. In February, the defendant allegedly left a phone message for the complainant (quoted supra) telling her: “you’re going to die very soon.” A few days later, the defendant allegedly began e-mailing the complainant. On March 7th, the complainant alleges she received the e-mail message from the defendant (quoted supra) employing sado-masochistic imagery. And on that same date, she alleges she received the phone message from the defendant (quoted supra) saying: “you keep pushing me.” In other words, as time went on, the defendant’s alleged actions toward the complainant were increasing in number while the content of his communications was becoming more graphic. As such, the court finds that defendant’s alleged conduct could “likely cause” the complainant “reasonable” fear of further escalation and physically harmful manifestation. “The initial objective of an infatuated stalker may be to demonstrate the depth of his or her affections [but] [t]he repetitive, persistent behavior * * * may be perceived to be, and may actually become, dangerous and potentially life threatening.” (Harmon, Rosner and Owens, Sex and Violence in a Forensic Population of Obsessional Harassers, 4 Psychol Pub Policy & L 236, 239 [June 1998].)
In enacting Penal Law § 120.50 (which took effect on Dec. 1, 1999), the Legislature declared that, “Stalkers who repeatedly follow, phone, write, confront, threaten or otherwise unacceptably intrude upon their victims, often inflict immeasurable emotional and physical harm upon them * * * our laws must be strengthened to provide clear recognition of the dangerousness of stalking.” (L 1999, ch 635, § 2, reprinted following Penal Law § 120.50, reprinted in NY Cons Law Serv, Quarterly Update, May 2000, at 1365.) The defendant’s conduct toward the complainant in this case, as alleged in the complaint, fits the description of the conduct which the Legislature took action to criminalize.
Accordingly, the defendant’s motion to dismiss the charge of stalking in the third degree for facial insufficiency is denied.