People v Amin (2024 NY Slip Op 50715(U))

[*1]

People v Amin

2024 NY Slip Op 50715(U)

Decided on June 11, 2024

Supreme Court, New York County

Drysdale, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 11, 2024
Supreme Court, New York County

The People of the State of New York,

against
Yehia Amin, Defendant.

Indictment No. 75095-23

For the People: ADA Edward Smith, New York County District Attorney's Office 
For the Defense: Ms. Rania Riad, Esq., The Legal Aid Society

Althea E.M. Drysdale, J.

This case stems from an incident where the Defendant is alleged to have stalked, taunted, and harassed a group of Israeli citizens for over ten minutes while they were sightseeing in Times Square, culminating in the assault of one of the tourists. As part of his omnibus motions, the Defendant moves to dismiss the charges of Stalking in the First Degree pursuant to PL §§ 120.60(1), Stalking in the Third Degree pursuant to PL §§ 120.50(3), and Aggravated Harassment in the Second Degree pursuant to PL §§ 240.30 (3), arguing that the prosecution elicited insufficient evidence to constitute the necessary element of a "course of conduct" for those crimes.
The motion to inspect the Grand Jury minutes is granted. As explained further herein, upon inspection of the Grand Jury minutes the motion to dismiss the indictment or reduce the crimes charged is denied. The evidence presented to the Grand Jury established a prima facie case of the Defendant's commission of each of the crimes charged in the indictment. The motion to dismiss the indictment on the grounds that the Grand Jury proceeding was defective within the meaning of Criminal Procedure Law ("CPL") § 210.35 is denied.
Statement of Allegations
On Wednesday, October 18, 2023 at approximately 9:30pm, the Complainant, an Israeli citizen, was visiting New York City with a group of six friends when they decided to stop by Times Square to sightsee. Several members of the group were wearing items that disclosed their religious affiliation: specifically, all five male members of the group were wearing "kippahs," traditional Jewish head-coverings also known as a "yarmulkes" as well as visible "tzitzits," which are strings that adorn the corners of a "tallit," a Jewish prayer shawl that is worn under clothing throughout the day.
After exiting the subway station located at 42nd Street and Times Square, the group was approached by a man, later identified as the Defendant, who appeared to be of Middle Eastern [*2]descent. The Complainant noticed that the Defendant was wearing what the Complainant described as a red and white "keffiyeh," a traditional headdress worn by men in the Middle East, around his head and face. While the Defendant was initially playing what the Complainant described as "loud English music" on a speaker that he was carrying in his hand, the Complainant observed that, upon seeing the Complainant and his group of friends, the Defendant changed the music to a song in Arabic. Almost immediately after doing so, the Defendant said "Free Palestine" and stated that "the Jews have to die." The Complainant also recalled that the Defendant stated, in sum and substance, that he was "happy with what Hamas did to the Jews," and repeatedly yelled "Allah Kashi," which the Complainant understood to mean in Arabic "God is Great." The Complainant further heard the Defendant state that he was "willing to die for the sake of Gaza."
These actions took place over at least ten minutes and lasted the length of at least six city blocks. Video surveillance introduced as evidence in the Grand Jury shows the Defendant closely following the group for the entirety of this time, always directly behind the group despite the pedestrian walkway area appearing to be in excess of fifty feet wide in certain places. On several occasions, the Defendant is observed gesturing at the group while holding the speaker in one of his hands. At one point, the group deviates from their linear route and instead travels diagonally across a pedestrian area of Times Square, and the Defendant is observed changing his orientation so that he can follow the group diagonally on their new path.
When the group reached the TKTS Red Stairs, located at 47th Street in Times Square, the Complainant stated that he and his group approached a security guard to alert them to the Defendant's actions. According to the Complainant, the security guard approached the Defendant and instructed the Defendant to stop following the group and to leave them alone, to which the Defendant responded in sum and substance, "Jews are frightened people that are going and consulting with the police ... let's see you now."
When the group doubled back and returned in the direction from whence they came, the Defendant, too, doubled back and followed behind them at a close distance. When the group stopped and yelled at the Defendant to stop following them, the Defendant allegedly responded, "Free Palestine." Another individual in the Complainant's responded yelled "Fuck Palestine" in response. As the group continued to walk back towards the subway, the Defendant allegedly continued yelling "Hamas should kill more of you," and indicated that he was "happy with what Hamas did," and that he was "prepared to die for Hamas." After following the group around Times Square for an excess of twelve minutes, all the while allegedly shouting what could plainly be interpreted as Anti-Semitic and Anti-Israeli rhetoric, the Defendant is allegedly observed on video surveillance running up to the group and striking his arm forward in a punching motion towards the Complainant's head before running away. The Complainant stated that he suffered pain in his face as a result of the punch, and the Defendant was subsequently arrested on-scene.
Memorandum of Law
The Defendant's argument centers around the premise that the timeframe in which the Defendant committed the instant offense is too brief to be considered a "course of conduct" as intended in the stalking statute and should instead be considered a singular, isolated incident, therefore requiring that the stalking charges be dismissed as facially insufficient. For the following reasons, the Court disagrees.
In 1992, the New York State Legislature updated the language of the menacing and [*3]harassment statutes in an attempt to better address situations of a perpetrator stalking a complaining witness. McKinney NY Penal Law § 120.40. Unsatisfied with the results of these amendments, in 1999, the Legislature again amended the Penal Law to formally include the stalking statutes with the intent to "protect victims by providing real and effective sanctions for stalking conduct even at its earliest stages.":
Stalkers who repeatedly follow, phone, write, confront, threaten or otherwise unacceptably intrude upon their victims, often inflict immeasurable emotional and physical harm upon them. Current law does not adequately recognize the damage to public order and individual safety caused by these offenders. Therefore, our laws must be strengthened to provide clear recognition of the dangerousness of stalking."
L.1999, c. 635, § 2.
"A person is guilty of stalking in the third degree when he or she [...] with intent to harass, annoy or alarm a specific person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnapping, unlawful imprisonment or death of such person or a member of such person's immediate family." PL §§ 120.50 (3).
"A person is guilty of stalking in the first degree when he or she commits the crime of stalking in the third degree as [...] and, in the course and furtherance thereof, he or she intentionally or recklessly causes physical injury to the victim of such crime." PL §§ 120.60 (1).
While "course of conduct" is not specifically defined within the stalking statute, Courts have routinely adopted the widely-accepted definition enumerated in the Florida Penal Law and adopted by a 1994 Kings County Criminal Court harassment case, People v. Payton, (161 Misc 2d 170, 174 [Crim. Ct. Kings County 1994] [Bruno, J.]), which defined a "course of conduct" as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."[FN1]
This "course of conduct" definition was quickly endorsed by the Appellate Division, First Department in Matter of Ivan F., 233 AD2d 210, 211 (1st Dept. 1996) (Finding sufficient evidence of menacing and harassment charges.) and was adopted again two years later by the Second Department in Matter of Jamar S., 250 AD2d 856, 672 (2d Dept 1998).
This definition of "course of conduct" was almost immediately applied to stalking cases once the statutes were enacted in 1999. See, e.g. People v. Starkes, 185 Misc 2d 186, 189 (Crim. Ct. NY County, 2000) (Guzman, J.); People v. Eugene, 2001 WL 856171 (Crim. Ct. NY Cty, 2001) (Guzman, J.); People v. Castro, 29 Misc 3d 1217(A)(Sup. Ct. Bx Cty. 2010) (Duffy, J.); People v. Winston, 78 Misc 3d 1201(A) (Crim. Ct. NY Cty, 2023) (Chin, J.). In People v. Ubbink, (120 AD3d 1574, 1575-76, [4th Dept 2014]), the Appellate Division, Fourth [*4]Department adopted the "course of conduct" definition laid forth in Payton as it related to stalking charges. (Finding evidence of a "course of conduct" when the Defendant, previously convicted of stalking the complainant, showed up on the complainant's doorstep.).
An "isolated incident" does not constitute a "course of conduct." See People v. Valerio, 60 NY2d 669 (NY Ct. App., 1983) (Finding that shouting at a union official one time while picketing outside of a union headquarters did not constitute a "course of conduct" for the purposes of the harassment statute.); People v. Wood, 59 NY2d 811 (NY Ct. App., 1983) ("Because no evidence was presented at trial that Defendant's conduct was anything other than an isolated incident, the People failed to establish that Defendant was guilty of harassment under the subdivision charged"). In situations evincing a short duration of time or a singular, isolated incident, Courts are less inclined to find that the Defendant's actions constitute a "course of conduct." See, e.g. People v. Barrow, 2008 NY Slip. Op. 52571U, *3 (Defendant's numerous threats to kill his neighbor, made in the course of a few minutes, did not establish a course of conduct); People v. Castro, supra (Defendant's "spontaneous, emotional, verbal outburst consisting of repeated cursing occurring during one altercation, did not constitute a course of conduct pursuant to this section of the statute.").
However, Courts have recognized that incidents that occur within a short time frame can be considered a "course of conduct" for the purposes of the stalking statutes. There is no mandatory minimum amount of time specified in either the statute nor in the common law, likely because these situations are more properly evaluated on a case-by-case basis and by reviewing the totality of the circumstances alleged. For example, in People v. Givens, 66 Misc 3d 1231(A) (Crim. Ct. Kings Cty. 2020) (Gingold, J.) the Court found that two telephone calls were sufficient to establish repeated acts or a "course of conduct." Courts have further held that "nine or more" phone calls over a two-day period of time would also suffice as a "course of conduct." People v. Eugene, supra at *1. In People v. Murray, 167 Misc 2d 857, 861 (NY Cty. Crim. Ct. 1995) (Stoltz, J.), the Court found that a "five to eight minute" interaction constituted a "course of conduct" when the Defendant followed the complainant to her office building, barred her from entering the building, continued to follow her as she retreated up the street, forcibly prevented her from obtaining assistance from other pedestrians, and ultimately attempted to drag her into Central Park.
Here, characterizing this Defendant's behavior as an "isolated incident" would be wholly inconsistent with the legislative intent of the stalking statutes. In determining whether the Defendant's conduct constitutes a "course of conduct," this Court finds that the Defendant's actions clearly exhibit a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." Payton, supra. In this instance, the Defendant allegedly taunted, threatened, and assaulted the complainants for over ten minutes while physically following them for multiple city blocks, all after being told by both the complainants and security personnel to stop. The Defendant clearly committed a "series of acts" by allegedly voicing multiple verbal threats, some of which wished death upon the complainants, playing what the Defendant self-described as "Hamas music," following the complainants for over ten minutes over the course of several city blocks, and eventually allegedly striking one of the complainants about the face. These acts were "committed over a period of time," albeit a relatively short period of time, namely approximately twelve minutes. In determining the significance of that twelve-minute time frame, the Court will take into consideration the alarming number and varying type of harassing actions committed throughout that time span. [*5]The content of the Defendant's statements and actions throughout this period of time clearly evince a "continuity of purpose." For these reasons, the Court finds that the Defendant's alleged conduct throughout this incident clearly constitutes a "course of conduct" as intended by the legislature.
The Court finds the defendant's argument that he was exercising his Constitutionally protected First Amendment right to freedom of speech similarly without merit. Payton, supra at 173-174. ("While constitutionally protected activity has been specifically excluded in some anti-stalking statutes, New York's statute is broader. It prohibits a course of conduct or repeated acts occurring over a period of time which intentionally places another person in reasonable fear of physical injury."); see also People v. C.C., 52 Misc 3d 1218(A) (Sup. Ct. Westchester Cty., 2016) ("But freedom of expression under the First Amendment has its limits. Banging on the window of a car with a person inside while daring him with epithets of foul abuse exceeds those limits. This is aggressive physical action in close proximity to a person, accompanied by threatening words, not just words alone.").
The Defendant's argument that the People failed to present sufficient evidence of a hate crime as it related to the charges of PL §§ 485.05(1)(a) and PL §§ 485.05(1)(b) is also unconvincing, as there was clearly sufficient evidence for a fact-finder to reasonably infer that the defendant both selected the complainants and committed the acts because of their protected characteristics. See e.g. People v. Morales, 225 AD3d 549, 549 (1st Dept. 2024) (Finding that the Defendant chose his victim in whole or substantial part based on their perceived sexual orientation when the Defendant shouted homophobic slurs at the victim immediately before shooting the victim in the face at point-blank range and subsequently made derogatory comments about the victim's significant other at the time of his arrest.).
For these reasons, the Defendant's motion to dismiss for facial insufficiency is denied.
The Defendant's remaining motions are decided as follows:
1. The Defendant's request for a Huntley/Dunaway hearing is granted.
2. The Defendant's request for a Mapp hearing is granted as it relates to any property recovered from the Defendant at the time of his arrest.
3. The Defendant's motion to controvert the search warrants is denied. The warrants in this case were previously reviewed by this Court and are entitled to a presumption of validity. People v. Castillo, 80 NY2d 578, 585 (1992); People v. Oritz, 234 AD2d 74, 75-76 (1st Dept. 1996). The sworn allegations of the search warrants were not perjurious on their face and satisfy the two-prong Aguilar/Spinelli test. People v. Griminger, 71 NY2d 635 (1988).
4. The Defendant's request for a Wade hearing is denied, as the Grand Jury minutes demonstrate that the identification was not in any way police arranged.
5. The Defendant's request to preclude unnoticed statement and identification evidence is granted to the extent that there exists any unnoticed statements or identifications which would be subject to the requirements of CPL § 710.30.
6. The Defendant's request for a Bill of Particulars is denied. The Automatic Discovery Form previously filed in this case provides all the particulars to which the Defendant is entitled. See CPL § 200.95.
7. As to any outstanding discovery sought by the Defense, the People are ordered to turn over any outstanding discovery outlined in CPL § 245.20 that is not subject to delayed disclosure within 15 days of the issuance of this order.
8. The Defendant's request that the People be required to file an additional Certificate of [*6]Compliance pursuant to CPL §§ 245.35 (3) is denied, as the Defendant has not alleged any particular action by the People that would demonstrate a need for an additional Certificate of Compliance.
9. The People's request for reciprocal discovery is granted. The Defendant is ordered to comply with the reciprocal discovery requirements set forth in CPL §§ 245.20 (4) and CPL § 250.20 and file a Certificate of Compliance pursuant to CPL §§ 245.50 (2).
10. The People are reminded to adhere to their Brady/Vilardi obligations.
11. The Defendant's request for a Sandoval hearing is granted and deferred to the trial court.
This constitutes the Decision and Order of the Court.
Dated: June 11, 2024
New York, New York
Hon. Althea E.M. Drysdale, A.J.S.C.

Footnotes

Footnote 1:"Some states, instead of requiring a 'series of acts,' require two or more acts. E.g. Cal. Penal Code § 646.9(f) [" 'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose"]; MI Stat. § 750.411h(1)(a) [" 'Course of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose"]; ND Stat. § 12.1-17-07.1(1)(a) [" 'Course of conduct' means a pattern of conduct consisting of two or more acts evidencing a continuity of purpose"]." McKinney NY Penal Law § 120.40.