People v Bradford B. (2025 NY Slip Op 50114(U))

[*1]

People v Bradford B.

2025 NY Slip Op 50114(U)

Decided on January 26, 2025

Criminal Court Of The City Of New York, New York County

Rosenthal, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 26, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Bradford B., Defendant

Docket No. CR-002889-24NY

For the defendant: Adam Silverstein, Esq.
For the People: Allie Watson, Assistant District Attorney, New York County

Robert Rosenthal, J.

By motion of November 29, 2024, defendant moves for dismissal of the accusatory instrument as facially insufficient. The People filed a response on January 13, 2025. After a review of the motion papers and exhibits, defendant's motion to dismiss counts 1 and 2 (menacing in the second degree and stalking in the third degree) are granted, and the motion to dismiss count 3 (stalking in the fourth degree) is denied.
Relevant Facts and Procedural History
On January 28, 2024, defendant was arraigned on the charge of stalking in the fourth degree (Penal Law § 120.45 [1]).
On April 11, 2024, the People filed a superseding information (SSI), adding the charges of menacing in the second degree (Penal Law § 120.14 [2]) and stalking in the third degree (Penal Law § 120.50 [3]). Defendant was arraigned on the SSI on April 16, 2024. No challenge to the facial sufficiency of the charging instrument was made on that date.
On the court date of October 29, 2024, the parties answered ready for trial, and the case was sent to a jury part. A judge of this courthouse reviewed the SSI and expressed concerns about the sufficiency of the instrument, though defense counsel had not made a facial sufficiency challenge at that time. The matter was adjourned for two weeks, on consent, for the People to examine the sufficiency of the instrument.
On the following court date of November 13, 2024, the case was before a second judge of this courthouse. The People had reviewed the charges, found them to be sufficient, and stated their readiness to move forward to trial.[FN1]
Defendant did not make any argument or motion with respect to the sufficiency of the instrument. Neither party provided any case law. The judge stated that the SSI was sufficient and adjourned the matter to December 3, 2024, for trial.
On November 29, 2024, defendant filed the instant motion to dismiss for facial [*2]insufficiency, off-calendar.
On the following court date of December 3, 2024, the People argued that this court should not consider defendant's motion because the November 13th judge deemed the charges to be facially sufficient. But defendant had not filed a facial sufficiency motion. Thus, the issue had not been fully litigated before that judge. For that reason — and because facial sufficiency is a non-waivable defect that can be raised at any time — to provide defendant with a "full and fair" opportunity to litigate this issue, this court set a date for the People to respond to defendant's written motion (see People v Evans, 94 NY2d 499, 502 [2000]; People v Alejandro, 70 NY2d 133 [1987]) and hereby decides defendant's motion.[FN2]

Discussion
An accusatory instrument must allege "facts of an evidentiary character supporting or tending to support the charges" (CPL 100.15 [3]) and demonstrate "reasonable cause to believe that the defendant committed the offense charged" (CPL 100.40 [4] [b]). It must contain non-hearsay factual allegations that "establish, if true, every element of the offense charged and defendant's commission thereof" (CPL 100.40 [1] [c]; People v Dumay, 23 NY3d 518 [2014]; People v Casey, 95 NY2d 354, 360 [2000]; People v Dumas, 68 NY2d 729, 731 [1986]). The [*3]non-hearsay factual allegations must be sufficient to establish a prima facie case, a standard which does not require the same level of proof needed at trial (People v Suber, 19 NY3d 247, 252 [2012]).
The court must view the facts in the light most favorable to the People when determining the facial sufficiency of an accusatory instrument (People v Contes, 60 NY2d 620, 621 [1983]). And, the court should approach factual allegations with a fair, not overly restrictive, or technical reading. The allegations must give the defendant enough notice to prepare a defense and prevent the defendant from being tried twice for the same offense (Casey, 95 NY2d at 360).
The factual portion of the SSI, sworn to by a civilian complainant, states:
Between approximately May 2020 and January 2024, I received more than five packages at the place of business where I work, 30 Hudson Yards, New York, NY, all of which were addressed to me personally and on which "Bradford B." or "Brad B."[FN3]
was written as the return addressee. Inside these packages were items that appeared to be intended as gifts, in addition to handwritten notes, also addressed to me personally, that described myself and my children. The notes were signed "Bradford B." or "Brad B." During this same time, I also received multiple social media messages from in Instagram account handle called "&commat;p********," which shows the name "Brad B." in the account's biography heading. These messages described the defendant's observations of me and desire to speak to me.
On June 19, 2023, at approximately 7:00 PM, outside 84 West 3rd Street, New York, NY, I observed the defendant approach me and my two children outside my home. I observed the defendant come within arm's length of me and ask me in substance whether I had received several gifts he sent to my place of work. I observed the defendant follow me for approximately half a block after the above-described exchange.
On January 27, 2024, at approximately 3:45 PM, outside 84 West 3rd Street, New York, NY, I observed the defendant standing on the sidewalk as I walked out of my home with my two children. When I exited the door and walked the opposite direction, I observed the defendant follow me and then approach me within arm's length. I turned around and asked him to stop following me; he did not stop. He followed me and my children for approximately two streets east and one street south. I asked the defendant to stop following me again, but the defendant continued and then stated in substance to me, "This ends today."
The defendant's above-described conduct has caused me to feel annoyed, harassed, alarmed, and threatened and to fear physical injury to myself and my two children.
The court takes judicial notice that the complainant is a public figure who has been the anchor or host of several news and other television programs, has published memoirs, and has a large social media following. The court rejects defendant's suggestion that by virtue of his public persona, defendant has invited — or must tolerate — stalking or any conduct that constitutes criminal activity. The complainant's status is not a factor in this court's determination of whether the charging instrument is sufficient.
[*4]Menacing in the Second Degree and Stalking in the Third Degree
A person is guilty of menacing in the second degree in violation of Penal Law § 120.14 (2) when:
"[h]e or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death."
"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct" (Penal Law § 15.05 [1]).
To sustain this charge, in addition to establishing that the defendant engaged in a repeated activity directed towards the complainant, the People must establish that the defendant's intent was to place the complainant in fear of physical injury, serious physical injury, or death; and that such fear would be reasonable.
A person is guilty of stalking in the third degree under Penal Law § 120.50 (3) when he or she:
"[w]ith intent to harass, annoy or alarm a specific person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnapping, unlawful imprisonment or death of such person or a member of such person's immediate family."
To sustain this charge, the People must establish that defendant had an intent to harass, annoy, or alarm, while engaging in intentional, repeated activity directed towards the complainant that is likely to cause reasonable fear of physical injury or several other listed harms.
While not defined in the statute, a "course of conduct" — an element of both statutes — has been interpreted to mean a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose" (People v Payton, 161 Misc 2d 170, 173-174 [Crim Ct, Kings County 1994]; see also In re Ivan F., 233 AD2d 210, 211 [1st Dept 1996].
As presented in the charging instrument (the SSI), the allegations, if true, establish that defendant repeatedly initiated contact with the complainant from 2020 to 2024 — sending him five packages with handwritten notes to his work address and multiple Instagram messages, and then approaching and following the complainant on two occasions outside his residence. Thus, the course of conduct, or repeated acts, element is satisfied for both charges (see e.g. Payton at 173-174; see also Matter of Luis A., Stone, Starkes, and Noka, cited infra). For these charges to be sufficient, however, the SSI must contain sufficient factual allegations from which this court can infer that defendant committed that course of conduct with the requisite intent set out in the charged statutes. Intent may be inferred from the act itself, or from the defendant's conduct and the surrounding circumstances (People v Bracey, 41 NY2d 296, 301 [1977]). Here, the allegations presented in the charging instrument do not satisfy the element of intent with regard to menacing in the second degree and stalking in the third degree.
To sufficiently charge menacing in the second degree, the charging instrument must allege facts from which the court can infer that defendant's intent was to place the complainant in reasonable fear of physical injury, serious physical injury, or death (see e.g. People v Stroud, 91 AD3d 1026, 1027 [3d Dept 2012]). Repeated acts of stalking, along with hitting, grabbing, and [*5]threatening physical harm were sufficient in Matter of Luis A. to infer the defendant's intent to place the complainant in fear of physical injury and sustain the charge (223 AD2d 505 [1st Dept 1996]). In People v Stone, the defendant sent the complainant a picture of himself holding a gun and wearing a mask with the text "take that," as well as a series of other previous messages — some threatening, some not — over a period of two months (43 Misc 3d 705, 711 [Crim Ct, NY County 2014]). That, and the fact that the defendant had "intimate access" to the complainant, was sufficient to sustain a second degree menacing charge (id.). In People v Murray, the defendant walked alongside the complainant and prevented her from entering her office (167 Misc 2d 857, 861 [Crim Ct, NY County 1995]). He also followed her on the street and forcibly prevented her from obtaining assistance (id.). Those facts were sufficient to support the menacing in the second degree charge. The court in People v Payton noted that the mere act of following or approaching a complainant was insufficient to sustain a menacing allegation, but the intent element of second degree menacing was established in that case because those acts were coupled with allegations of other hostile acts or threats — a prior physical and sexual assault on the complainant and prior threatening phone messages (161 Misc 2d at 176).
To sufficiently charge stalking in the third degree, the charging instrument must allege facts from which the court can infer that defendant's intent was to "harass, annoy, or alarm" the complainant. That intent was established in People v Starkes, where the defendant: left abusive, obscene voice messages (i.e., "you are a goddamn piece of shit" and "you are going to die very soon") over the course of more than 160 calls; followed the complainant some 20 times around her home, place of work, and on her commutes; and sent her emails in which he told her to tie him up (185 Misc 2d 186 [Crim Ct, NY County 2000]). A third degree stalking conviction was upheld in People v Noka, where the defendant had a history of making violent threats against his daughter and ex-wife, he confronted them with an angry look and his hand in his pocket — which his ex-wife recognized as signifying a firearm, and approached them in the same vicinity six times over a nine-month period (51 AD3d 468 [1st Dept 2008]). In People v Rockefeller, the Third Department upheld a third degree stalking conviction based on the defendant's numerous threatening calls to the complainant — including one warning him to "watch [his] back," that he was a "f***ing dead man," and that he was going to burn down his house and kill everyone inside (89 AD3d 1151 [3d Dept 2011]). The third degree stalking charge was deemed insufficient in People v Venson, however, where the defendant neighbor gave the complainant two gifts — which were not refused or objected to — then approached and followed her in the laundry room with a request to move her television (47 Misc 3d 92 [App Term, 1st Dept 2015]). That he also had taken nude photographs of her was "reprehensible" but insufficient to sustain the elements (id).
According to the SSI here, defendant sent more than five packages to the complainant at his work address, some or all of which contained handwritten notes that described the complainant and his children. The charging instrument does not contain the text of the notes. Nor does it describe the contents of the packages, other than the complainant's observation that the items in them "appeared to be intended as gifts."
The People urge the court to find the requisite intent for the menacing and third degree stalking charges in a series of suggestions of what defendant might have experienced as he sent packages to, and personally encountered the complainant. Without factual support alleged, the People ask the court to consider the time defendant must have spent looking at the complainant in order to describe him; the time he must have spent selecting, purchasing, and wrapping gifts, [*6]selecting, purchasing, and writing the notes; looking up the complainant's work address; and the effort it must have taken to bring the gifts to a shipping store, to buy boxes, and to ship the gifts to the complainant and his "babies."[FN4]
The People also ask the court to imagine that on multiple occasions defendant stood outside the complainant's home for hours waiting for him, and to "consider the time, effort, expense, and emotional obstinance such an endeavor requires." The People conclude that, having expended so much time and effort, defendant possessed "an intent that has long surpassed expression of innocent affection," acted with "manipulation, compulsion, and dangerous obsession," and thus must have intended to "harass, annoy and alarm" the complainant and intended to place the complainant in "reasonable fear of physical injury, serious physical injury or death," as is required by the third degree stalking and second degree menacing charges, respectively.
The People's argument fails for several reasons. First, the People's scenarios are not supported by facts presented in the SSI. The court is limited to the four corners of the SSI and reasonable inferences that might be drawn from them. The People's scenarios do not fall within those parameters, even in the light most favorable to the People.[FN5]
Second, even if the People's scenarios were credited as true and relied upon for the purpose of facial sufficiency, as is evidenced by the case law, the scenarios of defendant's actions — proposed in the People's argument — do not support the necessary inference that defendant acted with the requisite intent for either charge. The most logical inference this court can make is that the packages were gifts and notes from an over-zealous fan, annoying and frightening as that may be.
Finally the statement attributed to the defendant is too ambiguous to cure the deficiencies. The People ask the court to infer defendant's statement that "this ends today" is a threat. The United States Supreme Court has characterized a "true threat" as one "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" (Virginia v Black, 538 US 343, 359 [2003]). In the context of aggravated harassment, the Court of Appeals has stated that "any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence" (People v Golbe, 23 NY3d 455, 467 [2014], quoting People v Dietz, 75 NY2d 47, 53-54 [1989] [a genuine threat is one that is "serious, should reasonably have been taken to be serious, or was confirmed by other words or conduct"). While a genuine threat of physical harm may be proscribed, mere crude outbursts and angry words cannot be (People v Lagano, 39 NY3d 108, 122 [2022], citing Dietz at 53-54). Though the issue here is not proscription of speech, the cases are instructive and illustrate that [*7]defendant's words do not constitute what could be considered a genuine threat. Had defendant's statement been coupled with a threatening gesture, the appearance of a weapon, an abusive word, or some prior hostile or violent conduct, the court might have reasonably inferred a threat.Without more, however, the statement "this ends today" cannot reasonably be construed to constitute a genuine threat of physical harm. Given the surrounding circumstances, as stated in the accusatory instrument, defendant's statement is more likely an expression that he is giving up in his attempts to engage with the complainant.
For sure, the defendant's actions — his persistent efforts to contact the complainant by mail and in person — are troubling and obnoxious. The court has no doubt that defendant's conduct was annoying to the complainant and frightening. The obviousness of that is discussed below with regard to the fourth degree stalking charge that the court deems sufficient. The court is bound by the four corners of the complaint and reasonable inferences drawn therefrom. That the People's arguments and descriptions lie almost entirely outside the four corners of the complaint underscores the insufficiency of the complaint itself with respect to the intent element for these two charges. There is no basis here for an inference that the defendant's intent was to harass, annoy, or alarm, or to cause fear of physical injury of any kind. Accordingly, counts 1 and 2 must be dismissed as facially insufficient.
Stalking in the Fourth Degree
A person is guilty of stalking in the fourth degree under Penal Law § 120.45 (1) when:
"he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct . . . is likely to cause reasonable fear of material harm to the physical health, safety or property of such person, a member of such person's immediate family or a third party with whom such person is acquainted."
Unlike menacing in the second degree and stalking in the third degree, stalking in the fourth degree "focuses on what the offenders do, not what they mean by it or what they intend as their ultimate goal" (People v Stuart, 100 NY2d 412, 427 [2003]). In Stuart, the Court of Appeals explained the Legislature's decision with respect to the mens rea for this charge:
"The Legislature's decision to require intent as to a particular course of conduct—as opposed to a specific result—was purposeful. In following the lead taken by the drafters of the Model Anti-Stalking Code, the Legislature enacted Penal Law § 120.45 recognizing that many stalkers are mentally or emotionally disturbed and that trying to discern their specific motivations would prove difficult, if not impossible. The statute thus focuses on what the offenders do, not what they mean by it or what they intend as their ultimate goal. In this manner, the law could properly reach those delusional stalkers who believe either that their victims are in love with them or that they can win their victims' love by pursuing them. If the Legislature had required that the stalker intend to frighten or harm the victim, the statute would be debilitated and a great many victims endangered. Stalkers would be free to continue as long as they harbored the notion that they stood to win, rather than harm, their prey. We cannot tell how many stalkers intend no harm. The Legislature did not want to give them license."
(Stuart at 427 [internal citations omitted]).
Courts have sustained this charge under a wide range of facts. In one celebrity case, People v E.P., cited by the People, the fourth degree stalking charge was sufficient where the defendant contacted a well-known television producer over the phone and through letters in the [*8]mail, and appeared at his residence, totaling six acts over a ten-month period (20 Misc 3d 1119[A], 2008 NY Slip Op 51401 [U], *2 [Crim Ct, New York County 2008]). In his communications, the defendant stated that the complainant's television program had overheard his private conversations and was using his material without consent, which made him very upset (id.). In People v Polanco, the First Department Appellate Term held that a fourth degree stalking conviction was legally sufficient were the defendant followed the complainant for fifteen minutes through an underground tunnel and then the street, while making "distressing and menacing remarks" including "something bad . . . could happen to you" (57 Misc 3d 140 [A], 2017 NY Slip Op 51348 [U] [App Term, 1st Dept 2017]). In People v Anderson, the First Department Appellate Term upheld the sufficiency of the charge where the defendant appeared in the complainant's office with a letter and sexually explicit material, repeatedly appeared at her office uninvited, and then stood behind the complainant in a subway car (25 Misc 3d 135 [A], 2009 NY Slip Op 52235 [U] [App Term, 1st Dept 2009]). In People v Coveney, the Second Department Appellate Term affirmed the sufficiency of this charge where the defendant sent numerous letters of a disgruntled nature to the complainant's father, was told to stop, and then repeatedly followed the complainant near her home and in her neighborhood, hid behind trees and bushes near her house, and followed her children (50 Misc 3d 1 [App Term, 2d Dept, 11th and 13th Jud Dists 2015]). In People v Each, the court held that driving past the complainant's home and sitting in front of it two times, and then following the complainant's vehicle past her home another day, after previously having driven onto the complainant's lawn, was sufficient to sustain the charge (25 Misc 3d 1217 [A], 2009 NY Slip 52158 [U] [Nassau Dist Ct 2009]).
As discussed above, this court finds that this defendant's actions — sending five gifts and handwritten letters, messaging the complainant on Instagram (whether in a private direct message or on his public feed), approaching him outside of his home and following him in the street, constitute a course of conduct intentionally taken by the defendant that is sufficient to support the fourth degree stalking charge.
The statute also requires that the defendant know or reasonably should know that his conduct is likely to cause reasonable fear of material harm to the complainant's physical health, safety or property, or that of his immediate family. The knowledge element may be inferred where there is an implicit threat to the complainant — whether through language or physical proximity (see People v Romero, 50 Misc 3d 1202 [A], 2015 NY Slip Op 51853 [U], *2 [Crim Ct, NY County 2015] [repeated contact with stranger who is a celebrity satisfies knowledge element; as does conduct occurring after an express demand to cease]; see also Polanco, 2017 NY Slip Op 51348 [U]); People v Walcott, 47 Misc 3d 1217 [A], 2015 NY Slip Op 50658 [U], *4 [Crim Ct, NY County 2015] [where defendant climbed complainant's fire escape on three occasions and looked at her through the window, "[a]ny reasonable person would understand" that conduct would likely cause a reasonable fear of material harm]). Here, the court can reasonably infer that once defendant was twice told to stop following the complainant, who is a stranger, who had not responded to defendant's gifts, in the vicinity of his home, and that defendant continued to do so, in arm's-length proximity, that he knew or should have known that his conduct was likely to instill a reasonable fear of harm in the complainant. Indeed, at this pleading phase, the court finds the complainant's expressed fear for his physical safety and that of his two children to be reasonable.
Defendant is not entitled to a benefit of the doubt with respect to any legitimate purpose of his contacts with the complainant for the same reasons that this court infers knowledge. In [*9]Stuart, the Court of Appeals defined "no legitimate purpose" as "the absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten" (100 NY2d at 428). Generally, to determine whether a communication has a legitimate purpose requires an examination of the context, timing, and number of communications, their content, and whether efforts to communicate continued after a demand that they cease (see People v Williams, 45 Misc 3d 1202 [A], 2014 NY Slip Op 51426 [U], *2 [Crim Ct, NY County 2014]; People v Mitchell, 24 Misc 3d 1249 [A], 2009 NY Slip Op 51931 [U], *3 [Crim Ct, Bronx County 2009]; People v Bamba, 15 Misc 3d 1122 [A], 2007 NY Slip Op 50806 [U], *4 [Crim Ct, NY County 2007] [charge sustained where defendant contacted complainant 6 times after being told not to do so, even though individual contacts were not threatening]). While defendant's initial purpose for physically confronting the complainant may have been to confirm that the complainant received his gifts or to express adoration of the complainant, and although he made no clear threats, the statute does not protect such conduct where the defendant's outreach is repetitive and unwanted (see Stuart at 427). For pleading purposes, that defendant had not received a response regarding the gifts and then persisted in following the complainant after being told to stop, two times, establishes that his conduct was repetitive and unwanted and that there was no legitimate purpose of his conduct.
As the People have established all of the elements of the charge of stalking in the fourth degree, defendant's motion to dismiss count 3 is denied.
The foregoing constitutes the opinion, decision, and order of the court.
DATED: January 26, 2025
New York, New York
ROBERT ROSENTHAL
JUDGE OF THE CRIMINAL COURT

Footnotes

Footnote 1:The People were not ready to proceed on that date because there had been a consent adjournment.

Footnote 2:The People argue that this court should be bound by the November 13th court's oral sufficiency determination as the "law of the case." A court's decision or order is binding on judges of coordinate jurisdiction, where the matter at issue has been fully and fairly litigated (see Evans at 502; see also People v Portorreal, 28 Misc 3d 388, n.3 [Crim Ct, Queens County 2010] [full and fair opportunity to litigate means issue was addressed in writing, with opportunity for response]; People v Cortes, 77 Misc 3d 1236 [A], 2023 NY Slip Op 50110[U], n.2 [Crim Ct, Bronx County 2023]; People v Negron, 49 Misc 3d 392, 394 [Crim Ct, Kings County 2015] compare People v Reyes, 43 Misc 3d 1225 [A], 2014 NY Slip Op 50789[U], *3 [Crim Ct, NY County 2014] [although no written submissions made, court applied law of case doctrine where parties had fully and fairly litigated excited utterance issue through oral arguments, carefully considered by court]). The minutes of the October 29th and November 13th proceedings reveal that defendant did not move to dismiss for facial insufficiency, or argue that the charging instrument was insufficient. The discussion on November 13th was prompted by the October 29th judge's sua sponte statement that the charges might be insufficient. No written argument or case law was presented by either party on either of those dates. The judge on November 13th noted that neither party provided any case law concerning sufficiency. Simply, the facial sufficiency issue has not been fully litigated. There is no law of the case on this issue. The cases cited by the People (People v Johnson, 148 AD2d 304 [1st Dept 1989]; People v Leon, 264 AD2d 784 [2d Dept 1999]; People v Finley, 104 AD2d 450 [2d Dept 1984]; Matter of Spota v Bress, 136 AD2d 584 [2d Dept 1988]; Tenzer, Greenblatt, Fallon & Kaplan v Capri Jewelry, 128 AD2d 467 [1st Dept 1987]) are inapposite, as the issues in them appear to have been litigated through motion practice. Other cases cited by the People have no bearing on the circumstances of this case (People v Rodriguez, 244 AD2d 364 [2d Dept 1997]; Riley v State of New York, 225 AD3d 1287 [4th Dept 2024]; and Town of Angelica v Smith, 89 AD3d 1547 [4th Dept 2011]).

Footnote 3:The complaint included defendant's full last name, which has been initialized for this decision.

Footnote 4:The complaint refers only to the complainant's "small" children. The description of "babies" is made by the People for the first time in answering papers.

Footnote 5:Neither the text of the notes nor contents of the "gifts" is provided in the complaint. Thus, there is nothing from which the court might adopt the People's suggestions about the complexity of obtaining, preparing, or sending those things — if such efforts might support an inference of the particular requisite intent of these charges. Also, the complaint contains nothing about surveillance video from the location of the charged acts that might support the inference of the excessive amount of time the People suggest defendant spent waiting to meet the complainant.